Tilghman C. J.
This is an action of trespass, against the collectors ofthe poor tax, for seizing the plaintiff’s goods for a tax assessed upon his property in Penn township. The question is, whether the tax was legally assessed. On the 29th March, 1803, when Penn township was part of the township of the Northern Liberties, an act of assembly was passed, by which the city of Philadelphia, the district of Southwark, and the township of the Northern Liberties were incorporated, and made subject to a particular mode of taxation for the support of the poor.. In October, 1808, the.Court of Quarter Sessions of the peace of the county of Philadelphia, made an order for the division of the township of the Northern Liberties, by which a new township was created by the name of Penn. But-still, the taxes for the support of the poor have been -assessed and collected in the manner directed by the act of 29th March, 1803, nor has any poor tax ever been laid by the officers of Penn, as a separate township. It is now contended, that when Penn township was created, it became to all intents and purposes separate from the Northern Liberties, and no longer subject to the same system of taxation. The Court of Quarter Sessions is authorised by law to divide a township or create a new township. But it does not follow, that it is authorised to repeal an act of as-* sembly, by which a particular mode .of supporting the poor was established in a certain district, comprehending the new *110 township. ’ The township of the Northern Liberties, according to its present limits, and the township of Penn, are both contiguous to the city of Philadelphia, and there is the same reason for their being united in one system for the support of the poor, as there was while Penn remained part of the Northern Liberties: therefore, when the Court of Quarter Sessions divided the Northern Liberties, Penn became a new township, subject to the assessment and collection of the poor tax in the manner before established by law. It was also subject to a particular mode pf laying out roads established by law in the Northern Liberties before its division. This was decided by the Court of Common Pleas in the case of Comae’s road, where the principle was fully discussed, and the opinion of the Court delivered at large, with very satisfactory reasons. (1 Browne’s Rep. 164.) But it is also contended, that the act of 29th March, 1803, is virtually repealed, so far as respects Penn township, by the 13th section of the act of 1st April, 1811, by which it is enacted, that “the township of “ Penn shall be to all intents and purposes separated from the “ township of the Northern Liberties, and the inhabitants of “ the said township shall have, use, exercise, and enjoy, all the “ rights, privileges, and franchises which the inhabitants of “ other townships are, by the existing laws, entitled to, and “ the electors thereof shall, from and after the passing of this “ act, hold their election at the public school house at the “ corner of Eighth street and Buttonwood lane.” It is to be observed, however, that this provision is part of an act “ for “ the further establishment and erection of election districts ,” and the whole act is taken up with the subject of election districts, unless those general expressions respecting Penn township be considered as an exception. I will not say, that the construction is free from doubts, but I incline to restrict the meaning to matters concerning elections, because the legislature, by a subsequent act, have shewn beyond doubt, that Penn township was considered as included in the system for the support of the poor, introduced by the act of 29th March, 1803. The act to which I allude, was passed on the 8th March, 1815. In the 4th section it is enacted, that the number of the guardians of the poor appointed on the third Monday of May and November shall be eleven for the city of Philadelphia and five for the district of the Northern Liberties, ahd at the same time the commissioners for the district of *111 Spring Garden, (part of Penn township,) shall appoint two guardians of the poor for the township of Penn, subject to the same rules that the Select and Common Councils and the Commissioners of the district of Southwark are subjected to in the choice of guardians of the poor, all which said guardians, so appointed, shall be entitled to all the rights, powers, &c. and subject to the like duties, &c. as are provided in an adt entitled, “ An act for the consolidation and amendment of “ the laws, so far as they respect the poor of the city of Phi- “ ladelphia,” &c. (the act of 29th March, 1803,) and by the 5th section of the same law the guardians of the poor, at their; meetings in May, in each year, shall appoint one manager in addition to their present number, who shall be taken from the township of Penn, and who shall be entitled to all the rights, and subject to all the pains and penalties to which the other managers are by law subject. Now supposing, that throughout the whole of these laws, there may be some obscurity, and that Penn township may have laboured under some inconveniences, which I believe to be the case, that would not authorise this Court to make a decision, by which the collection of taxes, in that township, for many years past, would be declared illegal, and the collectors and other officers subject to actions, for having done what they conceived their duty. Where the law is clear the Court is not to regard inconveniences, but where it is somewhat doubtful, which is the most that can be said in this case, a public inconvenience is entitled to great weight in forming a construction. I am of opinion, upon the the whole, that Penn township continues to be included in the incorporation created by the act of 29th March, 1803, so far as relates to the payment of the taxes assessed for the support of the poor, and therefore, judgment should be entered for the defendants.
Yeates J, and Brackenridge J. concurred.
Judgment for the defendants.